No. 111,125

In the Matter of TREY T. MEYER, *Respondent*.

(327 P.3d 407)

Opinion filed May 30, 2014.

*Kate F. Baird*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the formal complaint for the petitioner.

*Gregory A. Lee*, of Cooper & Lee, LLC, of Topeka, argued the cause, and *Trey T. Meyer*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Trey T. Meyer, of Lawrence, an attorney admitted to the practice of law in Kansas since 1999.

On September 12, 2013, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer on October 3, 2013. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on November 5, 2013.

The hearing panel determined that respondent violated KRPC 1.2 (2013 Kan. Ct. R. Annot. 459) (scope of representation); 1.3 (2013 Kan. Ct. R. Annot. 464) (diligence); 1.4(a) (2013 Kan. Ct. R. Annot. 484) (communication); 8.4(c) (2013 Kan. Ct. R. Annot. 655) (engaging in conduct involving misrepresentation); and 8.4(d) (engaging in conduct prejudicial to the administration of justice).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

. . . .

"DA11422

"7.   V.H., a Michigan resident, was served with a petition seeking a declaratory judgment regarding real property located in Shawnee County, Kansas. In Decem-

ber, 2010, V.H. retained the respondent to represent her interests in the case. V.H. paid the respondent $2,000 for the representation.

"8.  In January, 2011, the respondent entered his appearance and filed an answer on behalf of V.H. Thereafter, the respondent failed to respond to discovery requests. The respondent failed to meet the deadline to exchange witness and exhibit lists. Additionally, the respondent failed to adequately communicate with V.H.

"9.  During the summer of 2011, the respondent moved his office. The respondent failed to inform V.H. that he had moved his office. V.H. traveled from Michigan to Kansas to meet with the respondent. When V.H. arrived, she discovered that the respondent had moved his office. V.H. was unable to meet with the respondent.

"10.  V.H. filed a complaint against the respondent. Later, the respondent entered into the attorney diversion program, pursuant to Kan. Sup. Ct. R. 203(d). In the diversion agreement, the respondent stipulated that he:

'. . . violated KRPC 1.3 by failing to respond to the discovery requests, to the requests for admissions and [sic] providing a timely witness and exhibit list; and the parties agree Respondent violated KRPC 1.4 for failing to promptly communicate with Complainant.'

The respondent failed to comply with the diversion agreement and the respondent's participation in the attorney diversion program was terminated. In the diversion agreement, the respondent agreed:

'that if he fail[ed] to comply with any of the terms and conditions of diversion, the factual stipulation made at paragraph 8 and the rule violations admitted above will be introduced into evidence at a Formal Hearing held in this matter.'

### "DA11672

"11.  On August 8, 2012, T.G., a resident of Jefferson County, Kansas, retained the respondent to file an action in divorce on her behalf. T.G. paid the respondent $1,500 for the representation. The respondent characterized the fee as a flat fee for the representation.

"12.  T.G. wished to have the matter filed in Douglas County, Kansas, rather than Jefferson County, Kansas, because T.G.'s estranged husband's family had a personal relationship with a judge in Jefferson County and because her community is small and she wished to keep her personal matter private. The respondent told [] T.G. that they could file the divorce action in Douglas County if parties could reach an agreement.

"13.  The respondent prepared a petition for divorce to be filed in Douglas County District Court. T.G. signed the petition on August 13, 2012, and returned the verified petition to the respondent on August 14, 2012. Additionally, on August 14, 2012, T.G. provided the respondent with the filing fee.

"14.  On August 14, 2012, the respondent sent T.G. an electronic mail message and stated that the petition would be filed that week.

"15.    The respondent failed to take any action to attempt to reach an agreement with T.G.'s estranged husband so that the action could be filed in Douglas County.

"16.    On August 20, 2012, T.G. sent the respondent an electronic mail message and asked for a status update. The respondent replied that he will check with the clerk's office and 'see where we stand.'

"17.    On August 21, 2012, T.G. sent the respondent an electronic mail message and asked the respondent to seek an order directing that T.G.'s estranged husband [] move out and pay child support. T.G. suffered verbal and physical abuse by her estranged husband. T.G.'s children observed the verbal abuse.

"18.    The respondent understood that there was significant tension in the home and T.G. needed to obtain temporary orders directing T.G.'s estranged husband to move from the home. On August 23, 2012, the respondent promised T.G. that the petition would be filed immediately. The respondent failed to file the petition.

"19.    On August 29, 2012, T.G. sent the respondent an electronic mail message and again asked the respondent if the petition had been filed. T.G. expressed her hopes that the petition be filed before the weekend. T.G. asked the respondent to notify her when the petition was filed so that she could anticipate when her estranged husband would learn of the matter.

"20.    On August 31, 2012, the respondent informed T.G., *via* electronic mail message, that her 'case materials' had been forwarded to the court and that he would let her know when he received file-stamped copies.

"21.    During the morning of September 4, 2012, a Jefferson County Sheriff's Deputy served T.G. with a divorce petition which had been filed by her estranged husband in Jefferson County, Kansas. T.G. called the respondent and informed him that she had been served with a divorce petition filed by her estranged husband. The respondent told T.G. that he filed a divorce petition on her behalf in Douglas County, Kansas. T.G. called the Douglas County District Court Clerk's office and was told that a divorce petition had not been filed on her behalf.

"22.    The respondent filed a petition on behalf of T.G. A certified copy of the petition indicates that the petition was filed on September 4, 2012, at 2:31 p.m.

"23.    Whether the petition was filed by mail or by hand-delivery was disputed at the hearing on the formal complaint. According to Cindy Winger, an employee of the Douglas County Clerk's Office, the petition for divorce was presented to the Clerk of the Douglas County District Court by hand-delivery. Ms. Winger testified that because her initials are on the petition and because the case number and division number are in her handwriting, she could conclude that the petition was presented to the Clerk of the District Court by hand-delivery. On the other hand, the Respondent testified that he put the petition for divorce in the mail to the Clerk of the District Court on August 30, 2012, prior to leaving for a personal trip to Texas. The court did not have evidence of a letter that was mailed with the pleadings. Additionally, the respondent did not have evidence of a letter that was mailed with the pleadings. Based on all the evidence, the hearing panel finds that

the respondent or someone on his behalf hand-delivered the petition for divorce to the Douglas County District Court Clerk's office on Tuesday, September 4, 2012, at 2:31 p.m.

"24. Because T.G. did not file first, she lost the ability to obtain an *ex parte* temporary order, she lost the advantage of having her divorce possibly go smoothly (because her husband believed she was repeatedly lying about having filed for divorce) [Footnote: The litigation that ensued following this volatile situation cost T.G. approximately $10,000 in attorney fees.], and she lost the advantage of having a temporary order issued immediately with custody and residence orders.

"25. Following September 4, 2012, T.G. continued to correspond with the respondent. T.G. reported a highly volatile situation with her estranged husband and again asked the respondent to obtain an order directing that T.G.'s husband move from the home.

"26. On September 9, 2012, T.G. again asked the respondent to file a 'move-out' order immediately. To demonstrate the extreme situation and tension to the respondent, T.G. forwarded audio communications between T.G. and her estranged husband to the respondent.

"27. On September 11, 2012, T.G. sent the respondent another electronic mail message and attached another audio recording. The respondent replied to T.G. and indicated that he would attempt to reach an agreement with T.G.'s estranged husband's attorney that day.

"28. On September 13, 2012, T.G. sent the respondent another electronic mail message and indicated that she assumed that the respondent filed everything as she directed. T.G. reminded the respondent of the urgency of the situation and the need for the orders.

"29. On September 14, 2012, the respondent replied that the only way to obtain temporary possession of the residence was by agreement. The respondent promised that he would file a motion that day and schedule a hearing on the motion as soon as possible. However, the respondent failed to file a motion on behalf of T.G. to obtain exclusive possession of the residence. Further, the respondent failed to file an answer on behalf of T.G.

"30. Because the respondent failed to take appropriate actions to resolve T.G.'s issues, T.G. terminated the respondent's employment. T.G. retained Sherri Loveland. On September 18, 2012, Ms. Loveland entered her appearance on behalf of T.G. and filed an answer to the petition. By September 24, 2012, Ms. Loveland served discovery requests, filed a motion for a temporary restraining order, filed a motion for exclusive possession of the marital residence, and made a request that the court enter orders of custody and parenting of the couple's son.

"31. T.G. requested that the respondent return the fee which T.G. paid the respondent. When the fee was not timely returned, Ms. Loveland contacted the respondent. The respondent informed Ms. Loveland that the check had been mailed to her office, which is located approximately one block from the respondent's office, but the envelope was returned due to insufficient postage on the envelope. Eventually, while at the Douglas County Courthouse, the respondent

provided Ms. Loveland with a trust account check in the amount of $1,500, representing T.G.'s fee.

"32. On September 20, 2012, T.G. filed a complaint against the respondent.

## "Conclusions of Law

"33. Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.2, KRPC 1.3, KRPC 1.4, KRPC 8.4(c), and KRPC 8.4(d), as detailed below.

### "KRPC 1.2

"34. Lawyers must abide by a client's decision concerning the lawful objectives of the representation and lawyers must consult with their client as to the means used to accomplish the objectives. KRPC 1.2(a). The respondent stipulated that he violated KRPC 1.2. T.G. directed the respondent to file the divorce action in Douglas County. In order to file the divorce case in Douglas County, the respondent had to reach an agreement with T.G.'s estranged husband. The respondent took no steps to attempt to reach an agreement with T.G.'s estranged husband. Additionally, T.G. repeatedly requested that the respondent file a motion for temporary orders, including custody and possession of the marital home due to verbal and physical abuse. The respondent never filed the motion. Finally, the respondent failed to seek temporary orders as requested by his client, in either Douglas County or Jefferson County. As such, the hearing panel concludes that the respondent violated KRPC 1.2.

### "KRPC 1.3

"35. Attorneys must act with reasonable diligence and promptness in representing their clients. See KRPC 1.3. The respondent stipulated that he violated KRPC 1.3. The respondent failed to diligently and promptly represent T.G. The respondent failed to timely file the action in divorce, the respondent failed to attempt to reach an agreement with T.G.'s estranged husband, and the respondent failed to request temporary orders. The respondent's lack of diligence caused T.G. actual injury—she was forced to share a residence with her abusive estranged husband for an extended period of time. Because the respondent failed to act with reasonable diligence and promptness in representing his client, the hearing panel concludes that the respondent violated KRPC 1.3.

### "KRPC 1.4

"36. KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' The respondent stipulated that he violated KRPC 1.4. In this case, the respondent violated KRPC 1.4(a) when he failed keep T.G. informed about the status of the representation. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.4(a).

### "KRPC 8.4(c)

"37. 'It is professional misconduct for a lawyer to . . . engage in conduct

involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The respondent engaged in conduct that involved dishonesty when he misrepresented to T.G. that her case had been filed on numerous occasions, when it had not been filed. As such, the hearing panel concludes that the respondent violated KRPC 8.4(c).

### "KRPC 8.4(d)

"38.   'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). The respondent engaged in conduct that was prejudicial to the administration of justice when he failed to either file a motion to dismiss the Douglas County case or withdraw from the representation in the Douglas County case. Additionally, the respondent violated KRPC 8.4(d) when he filed the action in Douglas County where venue was not proper and the relief requested by T.G. was not available. As such, the hearing panel concludes that the respondent violated KRPC 8.4(d).

### "American Bar Association
### Standards for Imposing Lawyer Sanctions

"39.   In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"40.   *Duty Violated.* The respondent violated his duty to his clients to provide diligent representation. The respondent also violated his duty to his clients to provide reasonable communication. Finally, the respondent violated his duty to the public to maintain his personal integrity.

"41.   *Mental State.* The respondent knowingly and intentionally violated his duties.

"42.   *Injury.* As a result of the respondent's misconduct, the respondent caused actual injury to V.H. and T.G.

### "Aggravating and Mitigating Factors

"43.   Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

"44.   *Prior Disciplinary Offenses.* On March 1, 2012, the respondent entered into the attorney diversion program for having violated KRPC 1.3 and KRPC 1.4, based on the respondent's misconduct committed during his representation of V.H.

"45.   *Dishonest or Selfish Motive.* The respondent engaged in dishonest conduct by falsely informing T.G. that her divorce action had been filed when it had

not been filed. Thus, the hearing panel concludes that the respondent's misconduct was motivated by dishonesty.

"46. *A Pattern of Misconduct.* The respondent engaged in a pattern of misconduct by repeatedly falsely assuring T.G. that he was timely handling her case. As such, the hearing panel concludes that the respondent engaged in a pattern of misconduct.

"47. *Multiple Offenses.* The respondent violated KRPC 1.2, KRPC 1.3, KRPC 1.4, KRPC 8.4(c), and KRPC 8.4(d). Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

"48. *Vulnerability of Victim.* V.H. and T.G. were particularly vulnerable to the respondent's misconduct. V.H. was vulnerable because she lived out-of-state and T.G. was vulnerable given the deterioration of her marriage.

"49. *Substantial Experience in the Practice of Law.* The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1999. At the time of the misconduct, the respondent had been practicing law for approximately 13 years.

"50. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"51. *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct.* The respondent testified about his personal problems and it appears that his personal problems may have contributed to his violations.

"52. *The Present and Past Attitude of the Attorney as Shown by the Attorney's Cooperation During the Hearing and the Attorney's Full and Free Acknowledgment of the Transgressions.* During the formal hearing, the respondent stipulated to the facts alleged by the disciplinary administrator.

"53. In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.41   Disbarment is generally appropriate when:

. . . .

(b)   a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

(c)   a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

'4.42   Suspension is generally appropriate when:

(a)   a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b)   a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

'5.11   Disbarment is generally appropriate when:

. . . .

> (b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.
>
> . . . .
>
> '5.13 Reprimand is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law.'

### "Recommendation

"54. At the hearing on the formal complaint, the deputy disciplinary administrator recommended that the respondent be suspended for a period of three to six months. The deputy disciplinary administrator further recommended that the respondent undergo a reinstatement hearing, pursuant to Kan. Sup. Ct. R. 219, prior to consideration of reinstatement. The respondent requested that he be allowed to continue to practice law and that his license not be suspended.

"55. The hearing panel has carefully considered the discipline to impose in this case. Because of the respondent's repeated misrepresentations and failure to take action on behalf of T.G., she had to continue to reside with her abusive estranged husband and suffered a level of terror and conflict. The injury suffered as a result of the respondent's misconduct is serious and warrants suspension from the practice of law. The hearing panel unanimously recommends that the respondent be suspended from the practice of law for a period of six months. Further, prior to consideration of any petition for reinstatement, the hearing panel recommends that the respondent undergo a reinstatement hearing, pursuant to Kan. Sup. Ct. R. 219.

"56. The hearing panel recommends that, at the reinstatement hearing, the respondent be required to provide written evidence that he has undergone a complete alcohol evaluation and has completed the recommendations for treatment, if any. Finally, the respondent owes apologies to his clients. The respondent should be required to provide a copy of the written apologies sent by the respondent to V.H. and T.G.

"57. Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, the discipline to be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2013 Kan. Ct. R. Annot. 356). Clear and convincing evi-

dence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." ' " *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

The respondent was given adequate notice of the formal complaint, to which he filed an answer; he filed no exceptions to the hearing panel's final hearing report. With no exceptions before us, the panel's findings of fact are deemed admitted. Supreme Court Rule 212(c), (d) (2013 Kan. Ct. R. Annot. 375). Furthermore, the evidence before the hearing panel establishes the charged misconduct in violation of KRPC 1.2 (2013 Kan. Ct. R. Annot. 459) (scope of representation); 1.3 (2013 Kan. Ct. R. Annot. 464) (diligence); 1.4(a) (2013 Kan. Ct. R. Annot. 484) (communication); 8.4(c) (2013 Kan. Ct. R. Annot. 655) (engaging in conduct involving misrepresentation); and 8.4(d) (engaging in conduct prejudicial to the administration of justice) by clear and convincing evidence and supports the panel's conclusions of law. We therefore adopt the panel's findings and conclusions.

The only remaining issue before us is the appropriate discipline for respondent's violations. At the hearing before this court, at which the respondent appeared, the office of the Disciplinary Administrator increased its recommendation for respondent's suspension from 3 to 6 months. The respondent requested that he receive a public censure. In the alternative, he requested suspension of 3 months, to be delayed until mid-June 2014 to allow him time to complete several pending cases.

The hearing panel recommended that the respondent be suspended for a period of 6 months and that, prior to any consideration of a petition for reinstatement, he undergo a reinstatement hearing pursuant to Kansas Supreme Court Rule 219 (2013 Kan. Ct. R. Annot. 407). The hearing panel recommended that at the reinstatement hearing the respondent be required to provide written evidence that he has undergone a complete alcohol evaluation and has completed the recommendations for treatment, if any. Further, the hearing panel recommended that the respondent be required to apologize to his clients V.H. and T.G. and to provide a copy of the written apologies sent by him.

We hold that respondent should be suspended for a period of 6 months effective as of the date of this opinion and that he be subject to a Rule 219 hearing before his suspension may be lifted. At the reinstatement hearing, the respondent shall be required to present clear and convincing evidence that he has undergone a complete alcohol evaluation and has completed the recommendations for treatment, if any. In addition, the respondent shall provide to the hearing panel and the office of the Disciplinary Administrator a written report from a licensed psychiatric, psychological, or social work professional approved by the Kansas Lawyers Assistance Program that includes an opinion there are no current impediments to his ability to practice law. Further, respondent shall provide to the hearing panel a plan under which his law practice after reinstatement will be supervised, for a period of time to be set by the panel, by an attorney acceptable to the Disciplinary Administrator and which will contain such other provisions as the Disciplinary Administrator shall deem appropriate.

## CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Trey T. Meyer be suspended from the practice of law in the state of Kansas for a period of 6 months, in accordance with Supreme Court Rule 203(a)(2) (2013 Kan. Ct. R. Annot. 300).

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2013 Kan. Ct. R. Annot. 406) and Rule 219. At the reinstatement hearing, he shall be required to present clear and convincing evidence that he has undergone a complete alcohol evaluation and has completed the recommendations for treatment, if any. In addition, the respondent shall provide to the hearing panel and the office of the Disciplinary Administrator a written report from a licensed psychiatric, psychological, or social work professional approved by the Kansas Lawyers Assistance Program that includes an opinion there are no current impediments to his ability to practice law. Further, respondent shall provide to the hearing panel a plan under which his law practice after reinstatement will be supervised, for a period of time to be set by the panel, by an attorney acceptable to the Disciplinary Administrator

and which will contain such other provisions as the Disciplinary Administrator shall deem appropriate.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.

MORITZ, J., not participating.

GERALD T. ELLIOTT, District Judge, assigned.